## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff*, | |
| **v.** | Civ. No. 13-01318 (MAJ) |
| **$170,000 IN U.S. CURRENCY,** *et al.*, | |
| *Defendant in rem.* | |

## OPINION AND ORDER

### I.    Introduction

Before the Court is a Motion to Dismiss (**ECF No. 34**) filed by Praxis Construction Inc. ("PRAXIS"), Hormigoneras del Sur Corp. ("HORMIGONERAS"), and Luis Santana Mendoza ("Santana") (collectively "Claimants") challenging the Civil Forfeiture Complaint (the "Complaint") (**ECF No. 2**) brought by Plaintiff, the United States of America (the "Government"). On February 24, 2013, the Government initiated the instant civil action *in rem* to enforce the forfeiture of $400,000 in U.S. currency because it is allegedly traceable or involved in various criminal offenses. *Id*. The U.S. currency at issue consists of: $170,000 in U.S. currency contained in a manager's check purchased by PRAXIS; $185,000 in U.S. currency contained in a manager's check purchased by PRAXIS; and $45,000 in U.S. currency contained in a manager's check purchased by HORMIGONERAS. (**ECF No. 2-1 at 3 ¶¶ 5-7**).

Specifically, the Complaint alleges that the Defendant property is subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) (civil forfeiture), 982(a)(1) (criminal

forfeiture), as property involved in a transaction or attempted transaction in violation of §§ 1956-1957 (laundering of monetary instruments, and engaging in monetary transactions in property derived from specified unlawful activity, respectively), and 21 U.S.C. § 881(a)(6), as money furnished or intended to be furnished in exchange for a controlled substance. *Id.* 3 ¶ 6.

Claimants contest the Government's forfeiture action on several grounds. They argue first that the Government's delay in litigating this action constitutes a violation of their Fifth Amendment Due Process rights. (**ECF No. 34**). Second, that the Complaint fails to meet the pleading requirements of Rule G(2) of the Supplemental Rules of Certain Admiralty and Maritime Claims ("Supplemental Rules"). *Id.* Third, that the Government fails to satisfy various other Civil Asset Forfeiture Reform Act ("CAFRA") procedural requirements. *Id.* And lastly, that the forfeiture constitutes an excessive fine in contravention of the Eighth Amendment. *Id.* For the reasons detailed below, Claimants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## II.    Background[1]

On February 24, 2013, the Government initiated the instant civil forfeiture action against $400,000 in U.S. currency, citing financial activity by and on behalf of Claimants as violating 18 U.S.C. §§ 1956, 1957 and 21 U.S.C. § 881. (**ECF No. 2**). Santana is the owner of various construction companies, including PRAXIS. (**ECF No. 2-1 at 6**).

The Complaint alleges in 2011, Homeland Security Investigations ("HSI") initiated an investigation regarding the unusual financial transactions between Juan R. Zalduondo

---

[1]      The Court recounts the facts as detailed in the Complaint and attached Declaration therein from a special agent with the United States Immigration and Customs Enforcement and Homeland Security Investigations. (**ECF No. 2-1**).

("Zalduondo") and others, including Santana, in various financial institutions. *Id.* at 4 ¶ 9.

Between September 30, 2011, and May 29, 2012, Zalduondo deposited $3,246,980 in U.S. currency in various financial institutions. *Id.* at 4. Most of the monies deposited were in the form of currency or cash notes of twenty-dollar bill denominations, wrapped in bundles held together by rubber bands. *Id.* Notably, some of these notes "contained markings similar to the ones utilized by drug trafficking organizations to maintain accountability of the ill-gotten proceeds." *Id.* According to interviews conducted by "Cornerstone Agents" and the Declaration's affiant of the financial institutions' managers and employees who witnessed the voluminous currency deposits, Zalduondo stated on various occasions that he did not know for certain the exact amount of currency or cash money he was depositing. *Id.* at 5. The majority of the deposits were set aside and inspected by a United States Customs and Border Protection ("CBP") narcotics detector dog and CBP chemist. *Id.* During the inspections, the narcotics detector dog alerted positive to the odor of narcotics, and the CBP chemist found cocaine and/or heroin at trace levels on the currency. *Id.*

The Complaint goes on to state that in September or October of 2011, Zalduondo made two cash deposits that amounted to $520,000 in U.S. currency at Banco Santander de Puerto Rico ("BSPR"). *Id.* He provided no supporting documentation, and simply alleged the cash originated from the sale of real estate property. *Id.* Thereafter, on November 21, 2011, Zalduondo opened a corporate bank account at La Puertorriquena Credit Union ("LPCU") and made an initial cash deposit of $303,000 in U.S. currency. *Id.* When asked about the source of the funds, he presented a signed contract showing an alleged sale of shares between his company JUAZA and Santana's company PAIRO. *Id.*

The contract between PAIRO and JUAZA indicated that on or about October 5, 2012, Santana purchased 50% of JUAZA's shares for $1,160,000. *Id*. at 7. According to the contract, Santana was to pay in the following instalments: $250,000 in managers check on October 2, 2011; $300,000 in cash on November 15, 2011; $300,000 in cash on December 15, 2011; and $310,000 in cash on January 12, 2012. *Id*. In February 2012, BSPR followed up with Zalduondo to obtain supporting documentation for the $520,000 deposited in the fall of 2011. *Id*. at 6. Zalduondo presented the same contract he presented to LPCU. *Id*.

PRDT tax return information revealed that from 2007-2010, Santana reported a taxable net income of less than $13,000 in U.S. currency each year. *Id*. at 11. PAIRO, which was incorporated in October 2011, had not yet filed any tax returns. *Id*. at 12. According to a purported settlement agreement between Santana and the Puerto Rico Department of Treasury ("PRDT"), he had an unreported dividend income of $10,345,843.26 in U.S. currency. *Id*. at 8.

In June 2012, Homeland Security Investigation agents ("HSI") witnessed a meeting between Zalduondo, Santana, and a Leticia Rivera-Marrero and Luis Lugo-Emmanuelli. *Id*. at 9. On June 23, 2012, Santana, Leticia Rivera-Marrero, and a Jacinto Delgado-Claudio made a cash deposit of $933,000 in U.S. currency. A Vargas-Ruiz was also present and presented a draft of the aforementioned settlement agreement to justify the deposit.[2] *Id*.

Thereafter, HSI agents interviewed employees at the branch regarding the deposit. *Id*. at 10. They noted that the cash was carried in three sport bags; packed in the form of

---

[2]      It is unclear from the face of the Complaint who Vargas-Ruiz is.

currency or cash notes of twenty dollar bill denominations; wrapped in bundles that were held together with rubber bands; emanated a peculiar odor; appeared to be moist as if it had been stored in a humid enclosure for an extended period of time; that Santana mentioned he was not certain how much cash he was depositing; and that the source was from his construction business over the years. *Id.*

In addition to the above, the Declaration notes that Santana is a convicted felon who served a year in federal prison for violations of 21 U.S.C. §§ 331(a), 333(a)(2), and 18 U.S.C. § 371.[3] *Id.* at 6. It further notes that between 2008 and 2009, Santana was the President of a construction company called CAMODA INC. *Id.* at 6. During this time, he was a business associate of Carlos Morales-Dávila, who is a former federal fugitive and leader of a drug trafficking organization responsible for the importation of multi-kilogram quantities of cocaine and heroin, as well as the murder of individuals belonging to or associated with rival drug trafficking organizations. *Id.* at 7. The two opened a bank account together at Banco Bilbao Vizcaya Argentaria on behalf of CAMODA INC., in which both appeared as signers. *Id.* at 6. Toll records also revealed that Santana had been in contact with Morales-Dávila at least four times during the period of August 2012 to September 2012. *Id.* at 12 ¶ 21.

On the same day the Government launched the forfeiture action, it simultaneously filed a motion to stay the forfeiture proceedings due to the ongoing criminal investigation involving potential claimants, a motion to seal the case, and a motion for issuance of a warrant *in rem*. (**ECF Nos. 1, 3, 4**).[4]  The Court granted all three. (**ECF Nos. 5, 6, 8**).

---

[3]     Introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded; intent to defraud or mislead; and conspiracy to commit offense or to defraud United States, respectively. (**ECF No. 2-1 at 6**).
[4]     The instant action is related to a series of civil forfeiture cases brought by the Government against various defendants *in rem* property, all stemming from a related criminal prosecution, *United States v.*

Thereafter, the Government requested a continuance of the stay and for the case to be transferred to the district judge presiding over the related criminal matter. (**ECF No. 9**). The Court granted both requests. (**ECF No. 10**). The stay was ultimately lifted on October 2, 2023, and transferred to the undersigned's docket on November 1, 2023. (**ECF Nos. 18, 21**). On November 17, 2023, the Government file a Notice of Publication, after which the Claimants filed their Verified Claim. (**ECF Nos. 27, 29**). Now comes the instant motion. (**ECF No. 34**).

## III.   Legal Standard

Civil forfeiture actions must comply with the heightened pleading requirements of Supplemental Rule G(2), which demands that the complaint "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). Applied here, the Government's civil forfeiture action must comply with the more stringent pleading requirements of the Supplemental Rules rather than the liberal provisions of Fed. R. Civ. P. 8. *See United States v. One Parcel of Real Prop. With Bldg., Appurtenances, & Improvements Known as 304-390 W. Broadway, S. Bos., Mass.*, 964 F.2d 1244, 1248 (1st Cir. 1992) ("[T]he Admiralty Rules demand more particularity in the crafting of forfeiture complaints than is generally required in authoring complaints under the Civil Rules.").

While the Court accepts as true all factual allegations and draws reasonable inferences in the Government's favor—the heightened pleading standard requires more than mere conclusory allegations. *Cebollero-Bertrán v. P.R. Aqueduct & Sewer Auth.*, 4

---

*Morales-Dávila et al.*, 14-cr-00754. *See United States v. $577,728.85 in U.S. Currency, et al.*, 12-cv-01803; *United States v. $933,000.00 in U.S. Currency et al.*, 13-cv-01170; *United States v. $2,880.00 in U.S. Currency et al.*, 15-cv-01715. The claimants and the grounds on which they challenge these forfeiture actions are not uniform across these cases for that reason, the Court will only discuss the instant matter at bar.

F.4th 63, 69-70 (1st Cir. 2021); *United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002). However, the allegations in the complaint need not stand alone when a supporting affidavit details the factual allegations underlying the complaint. *United States v. $20,000 in U.S. Currency*, 589 F. Supp. 3d 240, 252 (D.P.R. 2022) (citing *United States v. 4492 S. Livonia Rd.*, 889 F.2d 1258, 1266 (2d Cir. 1989) (the affidavit, which had "the dates, circumstances, location and parties to the alleged drug transactions as well as the drugs and drug paraphernalia seized from the premises, cured any defect in the complaint").

To determine whether a complaint complies with Supplemental Rules G(2)(f) and E(2)(a), courts look to the totality of the evidence. *Medina-Rodríguez v. $3,072,266.59 in U.S. Currency*, 471 F. Supp. 3d 465, 474-75 (D.P.R. 2020). While the Government is not required at the pleading stage to meet its ultimate burden of establishing the application of forfeiture by a preponderance of the evidence, it "may not seize and continue to hold property upon conclusory allegations that the defendant property is forfeitable." *United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d 365, 369 (S.D.N.Y. 2008). The Government is also not required to allege in the complaint all of the facts and evidence at its disposal. *United States v. Eleven (11) New Util. Vehicles*, 13-cv-1776, 2014 WL 4385734, at *10 (D.P.R. Sept. 4, 2014). It is sufficient for the Government to "simply plead enough specific facts for the claimant to understand the government's theory ... and undertake her own investigation." *Id.* The issue is one of pleading, not proof at trial. *United States v. $1,399,313.74 in U.S. Currency*, at 370.

This is in line with Fed. R. Civ. P. 12(b)(6), which dictates that the Court must determine whether the Complaint, construed in the proper light, "alleges facts sufficient to make out a cognizable claim." *United States v. Eleven (11) New Util. Vehicles*, 2014 WL

4385734, at *1. As is the case here, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

## IV.   Applicable Law and Analysis

### a.  Standing

While not disputed by the Government, as a preliminary matter, Claimants must demonstrate that they have standing to intervene in this action. *United States v. $30,800.00 In United States Currency*, 21-cv-1527, 2023 WL 2673439, at *3 (D.P.R. Mar. 29, 2023) ("Standing is a threshold question in civil forfeiture cases."). Both constitutional and statutory standing are required. *United States v. $20,000 in U.S. Currency*, 589 F. Supp. 3d 240, 249 (D.P.R. 2022).

Statutory standing is satisfied by simply complying "with the procedures and deadlines for filing a claim set out in Supplemental Rule G." *Id.* (quoting *United States v. Ltd. From Alexander Hamilton to Marquis de Lafayette Dated July 21, 1780*, 15 F.4th 515, 521 (1st Cir. 2021). As for constitutional standing, "at the initial stages of intervention, the requirements are not arduous and typically any colorable claim on the defendant property suffices." *United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 57–58 (1st Cir. 2013).

Claimants filed their verified claim pursuant to Supplemental Rule G(5) within the timelines prescribed by the Supplemental Rules. (**ECF No. 29**). It also complies with the substantive requirements of Supplemental Rule G(5). *Id.* Therefore, the Court finds that statutory standing is satisfied. Claimants have also alleged a colorable claim on the Defendant property, and thus, constitutional standing at this juncture is satisfied.

### b. Fifth Amendment Due Process Violation

Beginning with Claimants' first argument, Claimants maintain this action should be dismissed pursuant to the Fifth Amendment's Due Process Clause "due to the Government's unreasonable and unsupported delay" in prosecuting this civil forfeiture action. (**ECF No. 34 at 6**).

In evaluating whether significant delays in civil forfeiture actions deprive a claimant of their property in violation of the Fifth Amendment Due Process clause, the Supreme Court in *U.S. v. $8,850* adopted the test developed in *Barker v. Wingo*, 407 U.S. 514 (1972) to determine if a defendant's Sixth Amendment right to a speedy trial has been violated. 461 U.S. 555 (1983). "The Court observed that the specific due process concern spurred by inaction in a forfeiture case mirrors the concern of undue delay encompassed in the right to a speedy trial." *United States v. $307,970.00, in U.S. Currency*, 156 F. Supp. 3d 708, 716 (E.D.N.C. 2016) (internal citations and quotations omitted). The test requires weighing the "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *$8,850*, 461 U.S. at 556. "None of these factors is a necessary or sufficient condition for finding unreasonable delay. Rather, these elements are guides in balancing the interests of the claimant and the Government, to assess whether the basic due process requirements of fairness have been satisfied in a particular case." *Id*. at 565.

While the issue before the Supreme Court in *$8,850* pertained to the delay in *filing* the forfeiture action after the property was seized, courts have routinely recognized that the protection of due process extends "also to the conduct of the action once it has been filed." *United States v. $59,074.00 in U.S. Currency*, 959 F. Supp. 243, 250 (D.N.J. 1997) (citing *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1163 (2d Cir.1986); *see*

*also $20,000 in U.S. Currency*, 589 F. Supp. 3d at 260 ("The First Circuit Court of Appeals clarified, however, that delays after filing a complaint, where there is no prejudice to the claimant, do not violate due process") (citing *United States v. Zorrilla-Echevarría*, 671 F.3d 1, 12 (1st Cir. 2011));[5] *United States v. $307,970.00, in U.S. Currency*, 156 F. Supp. 3d 708, 716 (E.D.N.C. 2016) ("No one would argue that the due process rights of the accused criminal defendant are satisfied merely by initiating a criminal action.") (citing *United States v. Eccleston,* 615 Fed. Appx. 767, 775 (4th Cir. 2015)); *United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1519 (9th Cir. 1991); *United States v. Premises Located at Route 13*, 946 F.2d 749, 755 (11th Cir. 1991), *as amended* (Nov. 5, 1991). Otherwise, to "require prompt filing of a forfeiture action but allow indefinite postponement of the trial would reduce the filing requirement to a nullity." *Banco Cafetero Panama*, 797 F.2d at 1163 ("Under the *Barker* test, which we think applies to the holding of the forfeiture trial as well as to the filing of the action, there is a due process violation at some point."). The Court thus applies the *$8,850*—or *Barker*—test to the instant matter.

The first factor is the length of the delay. Here, Claimants argue that the Government's stay and sealing of this case for the past ten years is presumptively prejudicial. (**ECF No. 34 at 8**). The Court agrees.  This case has been pending since the

---

[5]        It is unclear whether the First Circuit in *United States v. Zorrilla-Echevarría* intended to apply the *$8,850* test to due process claims arising from a delay in *litigating* a forfeiture action as well. 671 F.3d 1, 12 (1st Cir. 2011) ("The only delay complained about here was not in the starting of the forfeiture procedures, but to hearing [the claimant's] claim to the money."). Despite qualifying that the only delay complained about was in litigating the action, it held that because the claimant suffered no prejudice, his due process claim failed. *Id.* This holding served as the basis of the district court's finding in *$20,000 in U.S. Currency* that the First Circuit does adopt the broader application. 589 F. Supp. 3d at 260. Because a court in this district and numerous circuit courts have applied the test to both a purported delay in initiating and *litigating* a civil forfeiture action, the Court will do so here.

initial seizure of the funds at issue which took place more than ten years ago. The Court finds this substantial amount of time is presumptively prejudicial such that a speedy trial inquiry is triggered. *See United States v. $307,970.00, in U.S. Currency*, 156 F. Supp. 3d 708, 717 (E.D.N.C. 2016) (finding this factor weighs in favor of the claimant when the property had been seized for four years and case pending for three-and-one-half years). Accordingly, the first factor weighs in favor of Claimants.[6]

The second factor is the "reason the [G]overnment assigns to justify the delay." *Barker*, 407 U.S. at 531. A look at the case docket reveals that on February 24, 2013, the Government simultaneously filed a motion to seal (**ECF No. 1**), a verified complaint for forfeiture *in rem* (**ECF No. 2**), and motion to stay (**ECF No. 4**). In requesting the stay, the Government cited to 18 U.S.C. § 981(g)(1) which states: "[u]pon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." The Court granted the request to stay and seal the matter. (**ECF Nos. 5, 8**).

Thereafter, the Government requested a continuance of the stay and for the case to be transferred to the district judge presiding over the related criminal matter. (**ECF No. 9**). The Court granted both requests. (**ECF No. 10**). The stay was ultimately lifted on October 2, 2023, and transferred to the undersigned's docket on November 1, 2023. (**ECF Nos. 18, 21**). Since then, the criminal docket reveals the parties have engaged in

---

[6]    Claimants also briefly argue that they were not properly "served process" or given "notice" of the Complaint as required by Supp. Rules G(4)(a)(i) and G(5)(a)(ii)(B). (**ECF No. 58 at 7**). This will be addressed below under the "Other CAFRA Procedural Safeguards" section.

discussions pertaining to both the criminal matter and pending civil forfeiture action simultaneously. (**ECF Nos. 2723 and 2732**).[7]

Despite this activity, Claimants argue that once the indictment was filed in the related criminal case in 2014, the stay and seal should have been lifted in the present matter. (**ECF No. 34 at 9**). They argue the Government instead abandoned the case and that regardless of whether this was done in bad faith or out of negligence, it warrants dismissal of the instant action. *Id*. at 10. In response, the Government argues the case was not abandoned, but simply stayed, and that its intent to "pursue forfeiture within the context of the criminal case [is] clear from a reading of the Indictment" and several Bills of Particular on that docket. (**ECF No. 39 at 2, 3**).

As Claimants point out, this matter was not before the undersigned for the majority of its lifetime. However, the previous presiding judges both granted the Government's motions to stay—and continued to do so throughout the lifetime of this case—pursuant to 18 U.S.C. § 981(g)(1). As mentioned, 18 U.S.C. § 981(g)(1) states that—upon motion from the Government—a court may stay a civil forfeiture proceeding if it determines that civil discovery will adversely affect the Government's ability to "conduct a related criminal investigation or the *prosecution of a related criminal case*." The Government's stay of the case was thus proper, as it was within the parameters of the statute, and it was sanctioned by the Court. *See also Pacnet Servs. Ltd. v. Off. of Foreign Assets Control of United States Dep't of the Treasury*, 521 F. Supp. 3d 181, 217 (E.D.N.Y. 2021), *appeal dismissed and remanded sub nom. PacNet Servs., Ltd. v. United States Dep't of the Treasury*, 21-cv-1069, 2022 WL 2561204 (2d Cir. July 8, 2022) ("The Second Circuit, however, has

---

[7]        This docket entry can be found in Criminal Case No. 14-cr-00754.

recognized that even substantial delays in resolving civil forfeiture proceedings can be justified by related criminal matters . . . While the delay [the claimant] faces here is substantial, the Government has weighty interests in investigating and prosecuting an alleged international mail fraud and money laundering scheme that has allegedly defrauded victims of hundreds of millions of dollars."). Moreover, while Claimants are correct that an "unreasonable delay" in pending criminal proceedings will not justify prolonged seizure of property, the Supreme Court in *$8,850* held it is "an element to be considered in determining whether [a] delay is unreasonable." 461 U.S. at 567. Accordingly, while the Court acknowledges a pending criminal proceeding does not *automatically* warrant a stay, as mentioned, the previous presiding judges found a stay was warranted under the applicable standard.

Furthermore, "[t]here is no evidence in the record that the Government was responsible for the slow pace of the criminal proceedings." *$8,850*, 461 U.S. at 568. The related criminal matter is a multi-defendant case consisting of seventeen defendants with over 2800 entries that is still ongoing. The criminal docket also indicates consistent activity over the last ten years. Accordingly, the Court finds no bad faith or negligence on the part of the Government in seeking permission from the Court to stay and seal the instant matter, which was granted, and is thus satisfied with the Government's reason for delay.

Turning to the third factor, assertion of the right to a judicial hearing, the Court finds this factor neutral. In order to assert this right, "[a] claimant may file a motion to have his property returned or seek an order compelling the government to file its complaint and 'the failure to use these remedies can be taken as some indication that [the claimant] did not desire an early judicial hearing.'" *United States v. Approximately $1.67*

*Million (US) in Cash, Stock & Other Valuable Assets Held by or at 1) Total Aviation Ldt.*, 513 F.3d 991, 1001 (9th Cir. 2008) (quoting *U.S. v. $8,850*, 461 U.S. at 568-569) (cleaned up). Claimants assert they promptly claimed their right to a hearing and to have their property returned by filing a petition for return of property and judicial proceeding on January 28, 2012. (**ECF No. 34 at 11**). The Court concedes that because the case was sealed, Claimants were unable to reassert their rights within the confines of the instant civil forfeiture proceeding thereafter. However, Claimants were on notice at least since 2015 that the funds subject to forfeiture were being discussed within the related criminal matter. (**ECF No. 221**).[8] While docket entries in the criminal case from 2023 indicate the parties have engaged in negotiations regarding these funds, it is unclear from the record whether there was any discussion before then. Absent any other formal assertion of their rights beyond the 2012 petition—over ten years ago—the Court finds this factor neutral.

Finally, the Court must evaluate the prejudice to Claimant. "The primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *$8,850*, 461 U.S. at 569. Here, as in *$8,850*, Claimants "ha[ve] [not] alleged or shown that the delay affected [their] ability to defend the propriety of the forfeiture on the merits." *Id*. Instead, Claimants argue that because the delay is presumptively prejudicial, they need not show any particular trial right prejudice. (**ECF No. 34 at 13**). They cite to the Supreme Court's holding in *Doggett v. United States* in support. 505 U.S. 647, 648 (1992); *Id*.

---

[8]        This docket entry can be found in Criminal Case No. 14-cr-00754.

The Court disagrees with Claimants' rigid application of *Doggett*. In evaluating the fourth *Barker* factor, the Supreme Court in *Doggett* "recognize[d] that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."[9] *Id.* at 656. However, it continued by saying that "[w]hile such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay." *Id.* at 655. Here, Claimants have not alleged or shown the delay impaired their ability to present a defense on the merits. Instead, they rely on the length of delay as the prejudice they have suffered. The Court finds this is not enough. *See United States v. $20,000 in U.S. Currency*, 589 F. Supp. 3d 240 at 260 ("The First Circuit Court of Appeals clarified . . . that delays after filing a complaint, where there is no prejudice to the claimant, do not violate due process") (citing *United States v. Zorrilla-Echevarría*, 671 F.3d 1, 12 (1st Cir. 2011)); *see e.g.*, *United States v. Approximately $1.67 Million (US.) in Cash, Stock, & Other Valuable Assets*, 513 F.3d 991, 1000-02 (9th Cir. 2008) (holding a 58-month delay did not violate due process); *United States v. $292,888.04 in United States Currency*, 54 F.3d 564, 566-67 (9th Cir. 1995) (holding a 30-month delay did not violate due process). This factor thus weighs in favor of the Government.[10]

---

[9]      Importantly, the Supreme Court in *Doggett* also noted that "if the Government had pursued [the defendant] with *reasonable diligence* from his indictment to his arrest, his speedy trial claim would fail." 505 U.S. at 656 (emphasis added). It continued by saying "that conclusion would generally follow as a matter of course, *however great the delay*, so long as [the defendant] could not show specific prejudice to his defense." *Id.* (emphasis added). Accordingly, even under *Doggett*, more than a showing of excessive delay is required.

[10]      Claimants cite to *Matter of U.S. Currency Totaling $470,040.00* in support of their argument that the Court should find financial hardship prejudicial for purposes of the fourth *$8,850*—or *Barker*—factor. 2020 WY 30, ¶ 37, 459 P.3d 430, 440 (Wyo. 2020). There, the Supreme Court of Wyoming cites several federal cases which find for this proposition. However, the Supreme Court of Wyoming also acknowledges several other federal cases that have read *$8,850* "to preclude a claimant from showing prejudice unless he demonstrates prejudice to his ability to present a defense." *Id.* This logically follows, as

On balance, the Court finds that Claimants have failed to demonstrate that this case should be dismissed based on *$8,850* for due process violations. While the delay has been substantial, it was court-sanctioned, and Claimants have not alleged that they suffered any actual prejudice as a result, as is required. The Motion is accordingly **DENIED** as to this argument.

### c. Sufficiency of the Complaint under Rule G(2)'s Heightened Standard

Moving to Claimants' second argument, Claimants focus their argument on the Government's forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). There is no direct mention of the Government's second theory, that being, forfeiture pursuant to 21 U.S.C. § 881(a)(6). In an abundance of caution, the Court will address both theories.[11]

As an initial matter, with regards to the manager's check pertaining to HORMIGONERAS, as Claimants correctly point out, there is not a single allegation pertaining to HORMIGONERAS besides the Government's assertion that the manager's check for $45,000 belongs to this entity. (**ECF No. 2-1 at 3**). There are no allegations linking any of the individuals suspected of unlawful conduct to HORMIGONERAS, no allegations that HORMIGONERAS is linked to any of the other entities suspected to be

---

the Supreme Court of the United States did not expand beyond what it deemed to be the "primary inquiry" for this factor, that being, "whether the delay has hampered the claimant in presenting a defense on the merits." *$8,850*, 461 U.S. at 569. While the Court empathizes with Claimants, absent binding authority expanding the scope of the Supreme Court's prejudicial inquiry, the Court refrains from doing so here.

[11]      *See United States v. $389,820.00 in United States Currency*, 20-cv-1048, 2022 WL 17573410, at *3 (M.D. Ala. Dec. 9, 2022) (finding because forfeiture was appropriate under § 881, § 981 and its applicability were not addressed); *Two Hundred Seventy-Two Thousand Dollars & No Cents ($272,000)*, 2018 WL 948752, at *4 (addressing forfeiture under both § 881 and § 981); *United States v. $25,325.00 in U.S. Currency*, 21-cv-584, 2023 WL 7409254, at *11 (M.D.N.C. Nov. 9, 2023) (granting summary judgment in favor of the government under § 881 even though § 981 was also raised).

implicated in unlawful conduct, nor are they mentioned in the Government's response. Accordingly, the Motion is **GRANTED** as to the manager's check for $45,000 purchased by HORMIGONERAS.

### i.   18 U.S.C. § 981(a)(1)(A)

Moving to the remaining manager's checks purchased by PRAXIS, 18 U.S.C. § 981(a)(1)(A) serves as a "broad" foundational statute in the civil forfeiture framework. It permits forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section[s] 1956, 1957 or 1960 of this title, or any property traceable to such property." *See United States v. All Monies ($477,048.62) In Acct. No. 90-3617-3, Israel Disc. Bank, New York, N.Y.*, 754 F. Supp. 1467, 1473 (D. Haw. 1991) ("broad language and legislative history of 18 U.S.C. § 981 and 21 U.S.C. § 881 makes it clear that any property involved in illegal activity in a way which facilitates that activity is forfeitable"). The basis for forfeiture in the instant matter under § 981 is money laundering pursuant to §§ 1956 and 1957.

"Money laundering is the process by which criminals—and most notably, drug dealers—disguise the origin of money obtained illegally from activities such as drug dealing, prostitution, investment fraud, gambling, or racketeering." *Medina-Rodríguez,* 471 F. Supp. 3d at 475 (internal citations and quotations omitted). To prove forfeiture under § 1956, the Government must allege that the Claimant,

> (1) knowing that the property involved in a financial transaction presented the proceeds of some form of unlawful activity, (2) conducted or attempted to conduct a financial transaction (3) which in fact involved the proceeds of that unlawful activity, (4) either (a) with the intent to promote the carrying on of that unlawful activity or (b) with the knowledge that the transaction was designed at least in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the unlawful activity.

*United States v. Two Hundred Seventy-Two Thousand Dollars & No Cents ($272,000)*, 16-cv-06564, 2018 WL 948752, at *4 (E.D.N.Y. Feb. 16, 2018). The specified unlawful activity in the present matter is drug trafficking. Notably, because the Government's "theory is that the property was involved in the commission of a criminal offense, it must show a substantial connection between the property and the offense." *United States v. $10,400.00 in United States Currency*, 21-cv-1367, 2022 WL 2063230, at *2 (D.P.R. June 8, 2022) (citing 18 U.S.C. § 983(c)(3)).

Claimants argue that the Complaint fails the pleading standard at this stage of the proceedings for forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). (**ECF No. 34 at 17**). The Court agrees. The only allegations pertaining to PRAXIS are that Santana is the owner (**ECF No. 2-1 at 6**), that Santana's unreported dividend income of $10,345,843.26 was partially obtained from PRAXIS (**ECF No. 2-1 at 8 ¶ 12**), and that PRAXIS's business volume has never exceeded three million dollars (**ECF No. 2-1 at 8 ¶ 13**). Apart from this, while the Government's Complaint details allegations pertaining to cash deposits made by Santana and Zalduondo, there are no allegations at all pertaining to the seized manager's checks purchased by PRAXIS other than the fact that they were seized.

More specifically, there are no allegations of any transaction involving the seized manager's check that would support an inference that they were involved in the laundering of illicit proceeds. Nor are there any allegations that the manager's checks in and of themselves constitute an attempt to conceal their source or promote a specified unlawful activity. While "[a] motion to dismiss challenges the sufficiency of the pleadings, not proof at trial," the Government must still allege facts that support a reasonable belief they will be able to meet their burden of proof at trial. Accordingly, the Government's forfeiture based on § 1956 under § 981 fails.

For similar reasons the Government's forfeiture based on § 1957 also fails. Section 1957 states that: "(a) whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b)." There are no allegations from which the Court can reasonably infer the purchase of the manager's checks was a knowing attempt to engage in a monetary transaction in criminally derived property. Accordingly, forfeiture based on this statute also cannot stand and the Motion to Dismiss as to this argument is **GRANTED**. *See United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d 365, 374 (S.D.N.Y. 2008).

### ii.    21 U.S.C. § 881

Moving to the Government's forfeiture under § 881, while admittedly the Complaint lacks factual specificity with regards to the manager's checks themselves, in evaluating the totality of the circumstances, the Court finds the Complaint survives the instant Motion. The Court elaborates.

"The forfeiture provision of the Controlled Substances Act provides that all money or other things of value that are furnished in exchange for a controlled substance, and all proceeds traceable to such an exchange are subject to forfeiture." *United States v. Assorted Jewelry Approximately Valued of $44,328.00*, 833 F.3d 13, 15 (1st Cir. 2016) (citing § 881(a)(6). As above, the Government must prove by a preponderance of the evidence that there is a "substantial connection between the property and the offense." *Id.* (citing 18 U.S.C. § 983(c)(3)). And while "the [G]overnment must show that the property was connected with illegal drug transactions, it need not link the property to a

particular transaction." *Id*. (citing *United States v. 1933 Commonwealth Ave*., 913 F.2d 1, 3 (1st Cir. 1990)).

Claimants argue the Government fails to sufficiently allege that the Defendant currency has any connection to drug trafficking. (**ECF No. 34 at 17**). In support, they refute the Government's contention that Santana's association with "the then law-abiding individual" Morales-Dávila, the canine drug alert on Zalduondo's cash, amount of cash deposited, and inference from Santana's tax returns adequately allege unlawful conduct. *Id*. at 17-33. Instead, they maintain that the Complaint "describes legitimate transactions supported by ongoing business concerns that show no reasonable belief of drug trafficking . . . and additionally fails to allege a 'substantial connection' between any drug trafficking activity and the seized funds." *Id*. at 19. The Court disagrees.

First, Santana's association with Morales-Dávila cannot be understated. At the time the Complaint was filed, the Government alleged Morales-Dávila "had been identified as a former federal fugitive and the leader of a drug trafficking organization responsible for the importation of multi-kilograms quantities of cocaine and heroin into [Puerto Rico] and the murder of individuals belonging and/or associated with rival [drug trafficking organizations]." (**ECF No. 2-1 at 7**). Notably, in 2008-2009, the two were business associates, even going as far as opening a bank account together on behalf of CAMODA INC. *Id*. Moreover, the two were in contact at least four times while Morales-Dávila in federal prison between August 2012 and September 2012. *Id*. at 12 ¶ 21. Many courts have found similar allegations and/or evidence tips in favor in the preponderance of the evidence analysis, including the First Circuit. *See United States v. One Lot of U.S. Currency ($36,634)*, 103 F.3d 1048, 1054 (1st Cir. 1997) (Finding that while "[a]ssociation with known criminals, without more, is, of course, not enough to

establish probable cause,"[12] the facts of the case before it presented more than "an incidental or fortuitous connection to known drug trafficking activity.") (superseded on other grounds); *United States v. One Lot of U.S. Currency Totalling $14,665*, 33 F. Supp. 2d 47, 59 (D. Mass. 1998) ("Moreover, the government has not shown that [the claimant] was doing business or had personal relationships with drug dealers or that he was even near a location associated with illegal drugs. Many courts have relied on this kind of information in the probable cause analysis.") (collecting cases); *United States v. Ten Thousand Seven Hundred Dollars & No Cents in U.S. Currency*, 258 F.3d 215, 224 (3d Cir. 2001) ("As a matter of logic, circumstantial evidence implicating claimants in recent drug activities, such as, for example, evidence of claimants' contemporaneous affiliation with known drug traffickers . . ..."). As the owner of PRAXIS, Santana's connection to Morales-Dávila is thus probative.

Second, the factual allegations pertaining to the larger drug investigation provide valuable context. For instance, PAIRO—another one of Santana's companies—had not filed any tax returns as of 2011. (**ECF No. 2-1 at 12**). Yet, PAIRO purchased fifty percent of JUAZA's shares—one of Zalduondo's companies—for $1,160,000 in 2012. *Id.* at 7. In addition to this, in 2012 Santana made a cash deposit of roughly one million dollars to allegedly settle a debt with the PRDT. (**ECF No. 2-1 at 9**). The cash was carried in three sport bags; packed in the form of currency or cash notes of twenty dollar bill

---

[12]      "Under CAFRA, as amended, which applies to civil forfeiture cases like this one which were commenced on or after August 23, 2000, the government's burden of proof at trial from mere probable cause (the old standard) to the preponderance of the evidence was increased. *See* 18 U.S.C. § 983(c)(1)." *United States v. $41,800 in U.S. Currency*, 09-cv-1185, 2010 WL 2998881, at *3–4 (D.P.R. July 23, 2010). "However, it is appropriate to rely upon forfeiture case law decided before the enactment of CAFRA even though those cases applied the less-burdensome probable cause standard[;] factors that weighed in favor of forfeiture in the past continue to do so now-with the obvious caveat that the government must show more or stronger evidence establishing a link between forfeited property and illegal activity." *Id.*

denominations; wrapped in bundles that were held together with rubber bands; emanated a peculiar odor; appeared to be moist as if it had been stored in a humid enclosure for an extended period of time; that Santana mentioned he was not certain how much cash he was depositing; and that the source was from his construction business over the years. *Id.* Notably, "[a] large amount of currency, while not alone sufficient to establish a connection to a drug transaction, is 'strong evidence' of such a connection." *United States v. $252,300.00 in U.S. Currency*, 484 F.3d 1271, 1275 (10th Cir. 2007) (citation omitted); *United States v. Currency, U.S., $147,900.00*, 450 F. App'x 261, 264 (4th Cir. 2011) (citing same). Moreover, "when large amounts of currency are comprised mainly of small denominations, this creates a further association with criminal activity." *United States v. $107,840.00 in U.S. Currency*, 784 F. Supp. 2d 1109, 1125 (S.D. Iowa 2011) (collecting cases).

All of this is additionally underpinned by the fact that Rule G(8)(b)(ii) mandates that a "complaint cannot be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." *United States v. Eighty-Two Thousand Three Hundred Dollars ($82,300) in U.S. Currency*, 18-cv-11848, 2019 WL 1112390, at *5 (E.D. Mich. Mar. 11, 2019) (Fed. R. Civ. P. Supp. AMC Rule G(8)(b)(ii)); *see also United States v. One Check in the Amount of $47,000 Payable to Brian Deiorio*, 14-cv-14261, 2016 WL 7197372, at *5 (D. Mass. Dec. 9, 2016) ("[The claimant] is correct that the evidence is far from overwhelming, however, given the 'reasonable belief' standard of review, and the fact that CAFRA does not allow the complaint to be dismissed for lack of evidence at the time the lawsuit is filed, the complaint survives the motion to dismiss."); *United States v. 17 Bank Accts. Containing Various Amounts of United States Currency*, 18-cv-189, 2019 WL 13225953, at *9 (D.

Wyo. Mar. 8, 2019) ("However, given that even the heightened pleading requirements in Supplemental Rule G(2) present a low bar, the Court  is of the opinion that the Complaint presents enough facts to support a reasonable belief that the Government will be able to meet its burden at trial."). Put plainly, the "government does not have to fully prove its case to meet the pleading requirements, but must only state enough facts for the Court to find a reasonable belief, based on the totality of the circumstances, that the defendant property is linked to narcotic trafficking." *United States v. $15,860 in U.S. Currency*, 962 F. Supp. 2d 835, 839 (D. Md. 2013). Based on said standard, the Court finds that at this stage of the proceedings, the Government has met its burden. Accordingly, the Court **DENIES** Claimants' request to dismiss the Complaint for failure to allege sufficient facts justifying forfeiture under § 881.

### d.  Other Procedural CAFRA Safeguards

Next, Claimants argue that the Government failed to properly serve the warrant and attach jurisdiction; that they were not given proper notice of the action; and that the stay and seal of the case was unreasonable.[13] (**ECF No. 34 at 33-40**). The Court will address each in turn.

### i.  Failure to Service the Warrant and Attach Jurisdiction

First, as to service and execution of the warrant, under Rule G(4)(3)(c)(ii)(A), "the authorized person or organization must execute the warrant and any supplemental process on property in the United States as soon as practicable unless: the property is in

---

[13]    With regards to this final contention, Claimants essentially mirror their due process argument outlined in more detail above. However, as indicated, the Court finds the stay was not in violation of their due process rights, as it was Court sanctioned and within the parameters of the applicable statute. With regards to Claimants contention that "No case was found wherein a stay was obtained without the opposing party having received notice of the complaint and the request to stay," the Court disagrees. The Court was able to find three cases within this district where civil forfeiture actions were stayed without notice to the Claimants: Case No. 15-cv-2576, Case No. 16-cv-2934, and Case No. 18-cv-1589.

the government's possession, custody, or control[.]" However, the "deadline for execution of process on the defendant *res* when it is in the custody of the government is not clear from the face of Rule G." *$20,000 in U.S. Currency*, 589 F. Supp. 3d at 255 (citing *United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 55 n.9 (1st Cir. 2013) ("Rule G specifically provides that the 'as soon as practicable' requirement does not apply when the 'property is in the government's possession, custody, or control' . . . ."). Supplemental Rule E(4)(a)—which applies to the extent Rule G does not address an issue[14]—that execution shall be done forthwith.

Here, the warrant for arrest was issued on April 30, 2013.   (**ECF No. 7**). Thereafter, the U.S. Department of Treasury executed the return of Complaint, Notice, and Warrant on October 24, 2023. (**ECF No. 37**). Accordingly, the Court has jurisdiction. *$20,000 in U.S. Currency*, 589 F. Supp. 3d at 256 ("Because the government has now complied with execution of process, the Court has *in rem* jurisdiction."). While the execution of the warrant can hardly be described as forthwith, Claimants make "no allegation that [they have] suffered prejudice specifically because of the delayed arrest of the property, but only that [they have] been prejudiced by not having access to [their] money." *Id*. Accordingly, the Court will not dismiss the action on this basis.

### ii.  Lack of Notice

Next, Claimants argue that the Government's notice nearly ten years after the seizure was improper. (**ECF No. 34 at 36**). The Government maintains Santana had actual notice insofar as he is a defendant in the related criminal matter, and therefore, had access to the Bill of Particulars[15] filed on March 25, 2015, on that docket which

---

[14]     *See* Rule G(1).
[15]     This can be found in Criminal Case No. 14-cr-00754 at ECF No. 300.

indicated the Government's intent to seek forfeiture of the $400,000 in manager's checks. (**ECF No. 39 at 13**). "A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." *$20,000 in U.S. Currency*, 589 F. Supp. 3d at 257 (citing Supp. R. G.(4)(b)(v)). Accordingly, the Court is unpersuaded by this argument. *See United States v. Cuong Mach Binh Tieu,* 11-cr-00097, 2014 WL 6680524, at *4 (N.D. Cal. Nov. 25, 2014) (finding "government's unequivocal statement in the Bill of Particulars that it intended to seek forfeiture" of property foreclosed claimants from successfully claiming "inadequate notice" "even if any mailed notice was technically defective."). Moreover, once the case was unsealed and the stay lifted, the Government promptly filed a formal notice of publication both on the government website as required by Rule G(4)(a)(iv)(C), as well as through certified mail to Santana, as required by Rule G(4)(b)(i). (**ECF Nos. 17, 24, and 27**).[16]

### e. Eighth Amendment Violation

Finally, Claimants argue that the seizure of $400,000 in manager's checks constitutes an excessive and unreasonable fine in violation of the Eighth Amendment.

---

[16]    The Court will not dismiss the Complaint based on Claimant PRAXIS's contention it has not been served to date either. Rule G provides for effective actual notice, which PRAXIS clearly had at least as of the date of the instant Motion. *See* Fed. R. Civ. P. G(4)(b)(v) ("A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice); *see also United States v. $33,890.00, More or Less, In U.S. Currency*, 15-cv-037, 2015 WL 5793928, at *3 (W.D. Tex. Oct. 1, 2015), *report and recommendation adopted sub nom. United States v. $?33,890.00, More or Less, in United States Currency*, 15-cv-037, 2015 WL 13804746 (W.D. Tex. Oct. 29, 2015) (finding same). Moreover, PRAXIS timely and properly submitted their verified claim, and has not alleged in any way how the lack of receipt of formal notice interfered with its ability to properly assert its claim against the Government. *See United States v. 630 Ardmore Drive, City of Durham, Parkwood Twp., Durham Cnty., N. Carolina*, 178 F. Supp. 2d 572, 579 (M.D.N.C. 2001) (finding same).

(**ECF No. 34 at 40**). In response, the Government contends this argument is premature. (**ECF No. 39 at 14**). The Court agrees.

Supplemental Rule G(8)(e) allows a claimant "to seek to mitigate a forfeiture under the Excessive Fines Clause of the Eighth Amendment by motion for summary judgment or by motion made after entry of a forfeiture judgment if: (i) the claimant has pleaded the defense under Rule 8; and (ii) the parties have had the opportunity to conduct civil discovery on the defense." *See* Fed. R. Civ. P. Supp. AMC Rule G. Because the parties have not yet conducted civil discovery on this issue, the Court finds this argument premature. *See Medina-Rodríguez*, 471 F. Supp. 3d at 481 (collecting cases); *United States v. 3885 Forest St., Denver, Colo.*, 12-cv-00665, 2013 WL 560161, at *2 (D. Colo. Feb. 14, 2013) (finding same); *United States v. Real Prop. located at 5294 Bandy Rd., Priest River, Bonner Cnty., Idaho*, 12-cv-00296, 2014 WL 5513748, at *14 (D. Idaho Oct. 31, 2014). The Motion is thus **DENIED** as to this argument.

## V.   Conclusion

Accordingly, for the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Claimants' Motion. (**ECF No. 34**). The Court finds the Government has not violated Claimants' Fifth and Eighth Amendment rights, and has satisfied the other named CAFRA procedural requirements. With regards to the manager's checks purchased by PRAXIS, the Court finds the Government has failed to satisfy the pleading requirements for forfeiture under § 981. The Motion is thus **GRANTED** as to this argument. That said, the Government has satisfied the pleading requirements for forfeiture under § 881. The Motion is thus **DENIED** as to this argument. Finally, the Court **GRANTS** the Motion as it pertains to the $45,000 manager's check purchased by HORMINOGERAS for failure to satisfy the requisite pleading standards.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of June 2024.

**/s/ María Antongiorgi-Jordán**
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**
